UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    BETTY L. HICKMOTT,                     Case No. 09-20493-dob
                                                        Chapter 7 Proceeding
              Debtor.                           Hon. Daniel S. Opperman
_____/

OPINION REGARDING TRUSTEE'S OBJECTION TO EXEMPTIONS

Introduction

The matter before the Court is Trustee's objection to Debtor's homestead exemption. On Schedule C of her bankruptcy Schedules, Debtor elected the federal exemptions provided in Section 522(d)(1) and claimed a homestead exemption of real property located at 10119 Woodland Road, Saint Helen, Michigan (the "Cabin"). The Trustee objects to Debtor's exemption on grounds the Cabin does not qualify as her residence under Section 522(d)(1) because she was not occupying or living in it at the time of her bankruptcy filing. The Trustee claims that on the date of filing, the Debtor was living in a house located at 10140 E. Carter Road, Saint Helen, Michigan (the "Carter Home"). Debtor admits she was not occupying or living in the Cabin when she filed her Petition, but it is her position she was constructively occupying the Cabin on the date of filing, thereby allowing her to take the Section 522(d)(1) homestead exemption in that real property.

Factual Background

Debtor and her now deceased husband purchased the Cabin in 1993. They were living in Owosso, Michigan at the time of purchase and used the Cabin on weekends and for Christmas, Easter and summer vacations. Debtor's husband also utilized the Cabin for his deer hunting

1

camp. After her husband passed away in 1998, Debtor left Owosso, and she and her mother moved into the Cabin and used it as their residence for approximately two to three months. Because they needed additional space in which to live, Debtor and her mother purchased the Carter Home, which is located immediately next to the Cabin. While residing in the Carter Home, Debtor kept the Cabin furnished and continued to maintain and use it as a guest house for other family members.

Although it is unclear when the Carter Home was purchased, the Debtor continued to live in it after her mother passed away in 2003. In 2006, Debtor's daughter and son-in-law had no place to live, so it was agreed that they could live in the Cabin and, in exchange, would make rental payments to Debtor in the amount of $500.00 per month. Debtor testified that her daughter only made payments of $200.00 per month. Debtor had been employed as a school district bus driver, but because of developing back problems and undergoing two knee surgeries, she went on disability in 2007, and is no longer employed. Her Schedules indicate that she relies upon social security disability payments and retirement benefits as her source of income. Debtor ran into financial difficulties due to the lack of sufficient rent payments and loss of employment for medical reasons. Because of those reasons, Debtor consulted with an attorney regarding bankruptcy in the Spring of 2008. At that time, she decided to move back into the Cabin to live and let the Carter Home go back to the mortgagee because she could not make the mortgage payments. In anticipation of moving back into the Cabin, the Debtor moved most of her furnishings out of the Carter Home and into a rented storage unit leaving the Carter Home basically empty. Debtor has had difficulty convincing her daughter to vacate the Cabin and, as a result, Debtor was still living in the Carter Home on the date she filed her Petition, as well as on

the date the evidentiary hearing was held.

Analysis

The Court has reviewed comprehensive briefs filed by the parties and considered the testimony of Debtor who was the sole witness at the evidentiary hearing conducted on July 23, 2009. No exhibits were offered into evidence at the hearing.

The issue before the Court is whether or not Debtor can use the Section 522 (d)(1) homestead exemption to exempt the Cabin she admittedly was not physically occupying or living in on the date of filing her Petition.

11 U.S.C. § 522(d)(1) states as follows:

> (d) The following property may be exempted under subsection (b)(2) of this section:
> (1) The debtor's aggregate interest, not to exceed $20,200 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

Trustee focuses on the phrase "uses as a residence" to support his objection to Debtor's homestead exemption. The Trustee argues that under the plain meaning of that phrase, Debtor could not have been using the Cabin as a residence as contemplated by the statute because she was not occupying or living in the Cabin at the time of filing. Trustee cites the case of *United States v. Plavcak,* 411 F.3d 655 (6th Cir. 2005) for the proposition that unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. If the words of the statute are unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced. It is the Trustee's position that the phrase "use as a residence" is unambiguous and obviously means that in order for the Debtor to claim a homestead exemption

in the Cabin she must have been occupying and living in it on the date of filing. Trustee argues that because Debtor was living in the Carter Home on the date of filing, she should not be allowed to exempt the Cabin pursuant to Section 522 (d)(1).

It is Debtor's position she should be allowed to take the homestead exemption because, although not living in it on the date of filing, she had constructive occupancy in the Cabin, which would satisfy the "uses as a residence" phrase. She argues that because it was her intent to move back into the Cabin and because she had taken steps to use it as her residence she should be allowed to claim a homestead exemption in it.

<u>Collier on Bankruptcy,</u> a noted authority on the Bankruptcy Code, makes this statement with regard to a debtor's right to claim an exemption under Section 522(d)(1):

> Essential to the right to a homestead exemption is designation and occupancy of the property. Occupancy may be constructive as well as actual, but there must be some positive indication of an intent to occupy the premises; a floating intention is inadequate. Mere absence alone is not sufficient to constitute abandonment of the homestead unless an intent to abandon is shown.

<u>Collier on Bankruptcy</u>, ¶ 522.09(1) (15th ed. rev.).

In other words, generally a residence will refer to a home that a debtor owns and occupies at the time of filing his or her bankruptcy petition. However, the determining factor should not be so mechanical as to require a debtor to occupy the home on the filing date or use the address on the bankruptcy filing. *In re DeMasi*, 227 B.R. 586, 588 (D.R.I. 1998).

This Court recognizes the theory of "constructive possession" which is defined as physical absence from a premises, coupled with an intent to return to the premises at some point in the future. *In re Lusiak*, 247 B.R. 699, 703 (Bankr. N.D. Ohio 2000). Cases cited by Debtor in her brief, namely, *In re Anderson*, 240 B.R. 254 (Bankr. W.D. Tex. 1999), *In re Buick*, 237

4

B.R. 607 (Bankr. W.D. Penn. 1999), and the *Lusiak* decision, set forth the criteria necessary to establish constructive occupancy of real property for the purpose of a homestead exemption. Because constructive occupancy is essentially an affirmative defense to abandonment, Debtor bears the burden of showing that she was in constructive occupancy of the Cabin on the date she filed her Petition. *Lusiak,* 247 B.R. at 703.

The criteria necessary to determine constructive occupancy are twofold: First, the Court must determine whether or not absence from the former homestead - - in this case the Cabin - - was done involuntarily, or under some sort of compulsion. Second, the Court must determine if when vacating the former residence, the departure was coupled with the intent to move back into it at a later time. For a debtor to establish the requisite intent to return to the property, the debtor's own testimony must be coupled with external circumstances which would demonstrate that it would be realistic to expect that the debtor will actually return to the property. Bare allegations by the Debtor of an intent to return to her property are insufficient to establish the essential criteria for the finding of constructive occupancy. *Lusiak*, 247 B.R. at 703.

Applying these criteria to the instant case, the Court must first decide from the facts and circumstances presented if Debtor moved out of the Cabin involuntarily or under some sort of compulsion. Second, the Court must decide if at the time Debtor moved out of the Cabin, she intended to move back into it some time in the future. In other words, does the Debtor's actions of purchasing a larger house and living in it for numerous years demonstrate to this Court that it would be realistic to expect that when she moved out of the Cabin she intended to move back and live in it at a later time.

In this case there is no dispute but that Debtor used the Cabin as her residence for a

5

period of two or three months after her husband passed away.  There is also no dispute that Debtor was living in the Carter Home on the date of filing.  There is no evidence to suggest that moving out of the Cabin was done involuntarily or under some sort of compulsion.  The evidence points to the fact that Debtor's move was strictly done on a voluntary basis and for the reason she wanted a bigger house with more space in which to live.  The two cases cited by Debtor in her brief set forth circumstances where the courts found the debtor's move out of their respective homes to be involuntary.  In *Anderson*, a member of the armed services had to move out of her home when the Army transferred her to another base.  In *Buick,* the debtor was ordered by a Family Court Judge to vacate the martial residence pending a divorce matter.  This Court can think of other circumstances where a debtor may leave his or her home involuntarily with the intent of returning at a later date.  For instance, a debtor's employer may require the debtor to move to a different state for a set period of time to complete a particular project.  Similarly, a debtor may temporarily move out of his or her home and move into the home of an ill relative in order to provide medical assistance until such time the relative has recovered.  None of these circumstances match the facts in this case.

In this matter, the record is barren of any evidence that Debtor's move from the Cabin was done involuntarily or under some sort of compulsion.  Debtor's testimony taken during the evidentiary hearing confirms her decision to move out of the Cabin was strictly voluntary on her part.  Her testimony established the fact her move out of the Cabin was brought about by her desire to live in a larger home with more needed space.  In addition, there is no evidence in this record to conclude that at the time Debtor moved out of the Cabin and into the Carter Home, she had the intent to move back into the Cabin and use it as her residence at some later time.  It is not

6

certain when the Carter Home was purchased, but Debtor testified she was living in it in 2003, when her mother passed away. Debtor did not decide to move back to the Cabin until 2008, when financial conditions were such that she could not afford to make the Carter Home mortgage payments and decided to allow the mortgagee to take it back. The Debtor lived in the Carter Home for numerous years and during that time showed no continuing intent to return and live in the Cabin until the Spring of 2008, upon consulting with a bankruptcy attorney. It is reasonable to conclude that Debtor would still be living in the Carter Home if she could have afforded to pay the required mortgage payments. The Court acknowledges that after moving out of the Cabin, Debtor continued to maintain the Cabin, continued to furnish it, and allowed her family to use it. The Court finds that after moving into the Carter Home, Debtor utilized the Cabin property as a "recreational cabin" with no obvious intent to ever use it again as her residence.

In summary, the Court finds that Debtor vacated the Cabin voluntarily and, further, at the time of the move, she did not intend to move back into it for the purpose of using it as her residence at some later date. Accordingly, the Debtor has not sustained her burden of proof necessary to show she was in constructive occupancy of the Cabin on the date of filing her Petition. For these reasons, the Court concludes that Debtor's residence at the time she filed her bankruptcy Petition was the Carter Home, rather than the Cabin.

The Trustee's objection to Debtor's Section 522(d)(1) homestead exemption is granted, and the Court directs the Trustee to prepare an order consistent with this bench opinion.

**Signed on September 24, 2009**

            **/s/ Daniel S. Opperman**
          **Daniel S. Opperman**

7

09-20493-dob Doc 41 Filed 09/24/09 Entered 09/24/09 16:19:22 Page 7 of 8

United States Bankruptcy Judge